LEE P. WATSON v. THE LION BREWING COMPANY ET AL.

*Equity practice—Bill to remove cloud from title to land—Claimed by complainant under deed from daughter of deceased owner— Who left other children, alleged in complainant's amended bill to be illegitimate—But who are not made parties—And whose rights are adverse to those of defendants— Who claim title through sale by administrator of decedent's estate—Held, that these children are necessary parties defendant —Possession to enable complainant to file bill under How. Stat. sec. 6626 —Must be bona fide and fairly gained—And not simply to pave the way for a suit under the statute—Act 260, Laws of 1887, amends How. Stat. sec. 6626—By permitting claimant of legal or equitable title to institute such suit whether in or out of possession—Administrator's sale—During minority of heirs—Lapse of five years after attaining their majority —Bars action by them against parties who have been in possession under administrator's deed—Or by their vendees who purchase after said five years—How. Stat. secs. 6074-5, apply to such a case.*

t. In a suit to remove a cloud from the title to real estate the complainant traced his title as follows:

On January 16, 1860, Ava Barbara Croma died seized and possessed of the land in dispute, leaving a son and daughter (Samuel and Elizabeth) as her heirs at law.

May 4, 1872, Samuel died without issue, leaving his sister, Elizabeth, as his sole heir at law, who, in February, 1885, conveyed the same to complainant, who entered into possession and filed his bill against the defendants, who were also in possession, claiming title *adverse* to that of complainant.

On the trial of the case in *open* court, the evidence disclosed that Ava Barbara Croma left three *other* children, named Schmidtgall, and that such proceedings were had after her death, in probate court, as resulted in the sale by her administrator, on April 6, 1867, of the land in question to one Siegle, through which sale defendants claim title.

Complainant amended his bill by alleging the *illegitimacy* of the *Schmidtgall* children and the pretence by the defendants that they have legal and equitable title to three undivided fifths of said land, and denying their heirship and right to inherit any portion of the premises. There was no claim that the *Schmidtgall* children were dead, and from the record the contrary presumption arose, although their whereabouts did not appear.

*Held*, that the *Schmidtgall* children were *necessary* parties to the suit, and that when their existence was shown on the trial complainant's bill should have been dismissed, unless amended so as to make

them parties; and that under complainant's theory they must be made defendants in the suit.

2. Complainant, soon after the purchase of certain land in the possession of and claimed adversely by defendants, caused a small board shanty to be constructed about a mile from the premises, on skids or runners, but without any floor, and moved the same upon the land in the winter, leaving it standing upon said movable foundation; he inclosed the premises with a fence of barbed wire, hastily constructed, with posts only at the corners, and then filed his bill under the statute to quiet his title to said lands.

Held, that the bill should be dismissed; that the possession was unfairly and surreptitiously gained, and was simply a proceeding to pave the way for a suit against those known to complainant to be exercising acts of ownership over the premises, and against whom ejectment would lie. *Stetson v. Cook*, 39 Mich. 755.

3. Complainant filed a bill to quiet his title to land conveyed to him by an heir at law of the owner who died seized of the same. The land had been sold at administrator's sale during the minority of the heir, and five years had elapsed since she attained her majority before complainant's purchase. The defendants claim *through* such administrator's sale, and a sufficient *adverse* possession of the land had been maintained thereunder by defendants and their grantors.

Held, that complainant's action was barred by How. Stat. secs. 6074-5, and his bill must be dismissed.

Appeal from Wayne. (Jennison, J.) Argued May 5, 1886. Decided June 17, 1886.

Bill filed to remove cloud from title. Defendant the Lion Brewing Company alone appeals. Decree reversed and bill dismissed. The facts are stated in the opinion and head-notes.

*Fraser & Gates*, for complainant.

*William Look* (*Henry M. Duffield*, of counsel), for defendant and appellant.

MORSE, J. The complainant in this case files his bill of complaint in the circuit court for the county of Wayne, in chancery, to remove a cloud from his alleged title to certain premises, described as all of lots 1, 2, and 3 of subdivision of lot 4 of the Dequindre farm, except a thirty-foot lot claimed and occupied by one John Darra.

He avers and claims in his bill, in substance, that on or about the sixteenth day of January, 1860, one Ava Barbara Croma died seized and possessed of said lands, having the legal and equitable title thereto, leaving two children as heirs at law, to-wit, Samuel Croma and Elizabeth Croma (now Elizabeth Pitts); that about May 4, 1872, Samuel Croma, aforesaid, died seized and possessed of the undivided half of said premises; that he left no issue, and his sole heir was his sister, the said Elizabeth Pitts.

In February, 1885, the said Elizabeth Pitts duly granted and conveyed the whole premises to the complainant.

He then sets out certain probate court proceedings, which he claims to be null and void for various reasons, by which said premises were, on the sixth day of April, 1867, sold by one Emil Boehm, claiming to be the administrator of the estate of said Ava Barbara Croma (known and named in such proceedings as Eva Barbara Croma), and pretending to act as such administrator, to one Gottlieb Siegle, which sale is purported to be confirmed by an order of the judge of probate of Wayne county.

He further avers that the defendant Henry Von Derheide sets up claim to said premises under said deed to Siegle, and by conveyances from said Siegle and wife to John W. Mc-Millan, and from said McMillan to said Von Derheide and Bernard Stroh (who is now deceased); that the said Clothilda Stroh, as widow, and the other defendants, except Clemens, as heirs at law of said Bernard Stroh, set up a claim in opposition to said complainant, under said last-named deed and the conveyances before mentioned; that Joseph Clemens, defendant in the suit, claims a portion of said premises through some conveyance from Von Derheide, the nature of which complainant cannot ascertain; and that the said Lion Brewing Company sets up a claim to said pieces or parcels of land under a deed from said Henry Von Derheide and his wife, dated April 20, 1880; and that at the time of the execution of said deed the said Bernard Stroh, deceased, was the president and principal stockholder of the said Lion Brewing Company.

He further avers that if either Siegle, Von Derheide, or Stroh, or either of them, were ever in possession of the premises, or any part thereof, after said Samuel and said Elizabeth Croma became of age, such possession was not adverse to them, and that such possession was held as tenants under said Samuel and Elizabeth Croma.

He further alleges, upon information and belief, that from December 11, 1866, to April 6, 1867, the said Siegle had possession as tenant under said Samuel and Elizabeth Croma; and that about said eleventh day of December, 1866, the said Siegle and the said Emil Boehm conspired together to defraud the said Cromas out of said land; and, in pursuance of said conspiracy, the aforesaid proceedings in probate court of that date were taken; and that the amount of money alleged to have been paid by said Siegle for said premises was grossly inadequate, and only a fraction of the value of the same; that Boehm never rendered an account of his pretended administration of the estate of the mother, and, while said Samuel and Elizabeth were yet minors, absconded from the State, and converted to his own use the moneys received from the sale of said land; that Von Derheide, McMillan, and Stroh, at the time of their deeds, had full knowledge and notice of the illegality and fraud upon which their pretended titles were based.

He prays in said bill that the sale of the premises by Boehm, and the deed executed by him to Siegle, and all the orders and proceedings of the probate court leading thereto or confirming the same, may be decreed null and void, and that said deed may be delivered up to be canceled, and that said defendants, and each of them, may be required and compelled to execute to him such conveyances as may be necessary to remove all clouds from his title, arising in any manner from such probate proceedings, and the deeds under and by virtue of them, or resulting therefrom.

He also asks an injunction to enjoin them from selling and incumbering the said premises, or commencing or prosecuting any suit or proceedings at law to obtain possession of the same, or any part thereof.

He adds a prayer for general relief.

The defendants, by their answer, deny complainant's possession of the premises, and his title thereto. They aver that he had no other possession of the premises than such as he had unfairly gained for the purpose of filing his bill of complaint; that the defendants and their grantors, had been in the possession of the premises continuously for upwards of 20 years before the filing of the bill, had paid the taxes thereon, and exercised acts and rights of ownership over the same; that they had built sidewalks in front of the premises, and sold two parcels of the land,—one piece upon contract and one by deed; that complainant, without notice of any claim of title to the defendants, surreptitiously surrounded the premises with a hastily constructed pretense for a fence, and placed upon one of the lots a shanty, and upon another a shed; that this was within a few days of the filing of the bill, and purposely concealed from the defendants, and for the express purpose of enabling complainant to falsely allege that he was in possession of said premises.

They conclude their answer with a general denial of all the allegations of the complainant's bill, and assert that he has no lawful or equitable title to, or possession of, the premises, or any part thereof.

The defendant Clemens does not answer, and does not appear in the record, save the mention of his claim in the bill as aforesaid.

The complainant's bill of complaint was filed on or about the twelfth day of March, 1885, and the answer of defendants is dated April 17, 1885. Replication not dated.

Under the issue thus made the parties commenced the taking of the testimony in open court. The examination of the first witness developed the fact that Ava Barbara Croma died leaving other children besides the two named in said bill, to-wit, George, Eva Barbara, and Amelia Schmidtgall.

The complainant thereupon asked leave to amend his bill, which was granted, against the objection of the defendants. The amendments consisted in adding an allegation that "said Ava Barbara Croma also left surviving her three ille-

gitimate or bastard children, to-wit, George Schmidtgall, Eva Barbara Schmidtgall, and Amelia Schmidtgall, as your orator is informed and believes;" also that "defendants sometimes pretend, as your orator is informed and believes, that said children, although bastards," are heirs at law of said Ava Barbara Croma, and as such have the legal and equitable title to three undivided fifths of said land; and complainant then charges that they are not such heirs, and inherit no portion of said premises.

The prayer of the bill was also amended so as to ask of the court, if it should be found to be true that they did inherit as claimed by the defendants, and the complainant thereby entitled to only an undivided two-fifths of said premises, that the decree be the same as originally prayed, except that it be limited in effect so as to relate to and affect only such undivided two-fifths.

The cause then went to hearing upon a mass of testimony adduced by both parties, the alleged bastard children not being made defendants, and not appearing, and not being represented by any one.

The court below decreed, in substance, in accordance with the prayer of complainant's original bill, and enjoined defendants perpetually from interfering with said premises, or commencing or prosecuting any suit or suits to recover possession of the same, as asked by complainant in his bill. The court also decreed that it appeared from the proofs that since the commencement of the suit the said defendants had forcibly and wrongfully entered upon and deprived the complainant of his possession of the premises, and ordered that the complainant be let into possession.

The decree made no reference to the alleged illegitimate children, but gave the whole title of the premises to complainant.

The Lion Brewing Company, one of the defendants, appeals to this Court.

The evidence shows that Ava Barbara Croma owned this land when she died, January 16, 1860. She left no will. Her heirs were five children: Elizabeth Croma (now Pitts),

born September 10, 1850; Samuel Croma, born in 1851 or 1852; George Schmidtgall, born in 1856; Eva Barbara Schmidtgall, born in 1857; and Amelia Mary Schmidtgall, born in 1859.

February 9, 1860, Jacob Schmidtgall, reputed father of the three last-named children, was duly appointed by the probate court of Wayne county administrator of her estate and guardian unto all the children. May 25 of the same year he resigned his trust as guardian of Samuel and Elizabeth, but continued to act in that capacity for the other three until November 9, 1866, when he resigned his office entirely.

June 7, 1860, he also resigned as administrator of the estate, and one Casper Huber was appointed administrator *de bonis non*. Huber was appointed upon the petition of Christian Schwartz, who was then guardian of Elizabeth and Samuel. Huber acted until November 27, 1866, when he resigned.

When Schmidtgall's resignation was accepted as guardian his account had been presented to and allowed by the probate court, and by such allowance the minors were indebted to him.

November 9, 1866, Emil Boehm was appointed guardian of the Schmidtgall children, their names being given as George Engeline, Eva Barbara Engeline, and Amelia Mary Engeline, the surname Engeline being the maiden name of their mother.

December 7, 1866, as such guardian, he filed a petition, praying that he might be appointed administrator *de bonis non* of the estate of "Eva" Barbara Croma. He was subsequently appointed such administrator, after notice by publication. He petitioned, January 9, 1867, for license to sell said real estate, which was granted, upon hearing, after publication of notice.

April 6, 1867, under said license, and after notice, he sold said premises at public sale, Patrick McGinnis acting as auctioneer, to Gottlieb Siegle, who was the highest bidder therefor, for the sum of $1,065. Said sale was confirmed by

an order of the probate court, and a deed ordered to be executed to the purchaser.

At the time of this sale Siegle had a lease of the premises,. under which he was in possession, from Huber, executed when he was acting as administrator, and running for a term of eight years. The possession he held under the lease was an inclosure of the premises, and a pasturage of his cows thereon. When he received his deed he commenced building cottages upon the land, putting up three, and renting at least some of them.

Seven years thereafter, March 19, 1874, he sold the premises to John W. McMillan for $4,000. May 1, 1875, McMillan conveyed the same to Bernard Stroh and Henry Von Derheide; and December 1, 1875, Bernard Stroh and wife deeded all their right and title to the premises to Von Derheide.. This gave Von Derheide the full title, and July 29, 1876, he and his wife made and recorded a plat of the premises, dividing the same into streets and lots, making 43 lots in all.

Von Derheide paid taxes upon the land, and gave mortgages upon it, and on April 20, 1880, Von Derheide and wife sold and conveyed the land by warranty deed to the Lion Brewing Company, for $5,000, subject to the payment of a mortgage of $3,000, which mortgage the company afterwards paid.

Samuel Croma, the brother of Elizabeth Pitts, died un-married, and without issue, in 1872. Elizabeth Pitts became of age September 10, 1871.

In February, 1885, the complainant, who had lately arrived in Detroit from the state of Virginia, and opened a law office near that of Fraser & Gates, his solicitors in this suit, through them, negotiated for the purchase of this property from Elizabeth Pitts. He was to pay her $1,000 for her title. She received $200, and, from her testimony, it seems whether or not she was to obtain the balance depended on the success of the complainant in acquiring the property. The deed is a quitclaim, and dated February 19, 1885.

At the time of the purchase by complainant there were no buildings upon the premises, except a house occupied by

one John Darra and his family, the said Darra claiming title to the premises upon which said house was situated under a warranty deed from the Lion Brewing Company, dated December 22, 1884. Darra is not made a defendant in this suit, and the complainant' testifies that he did not intend to make him any trouble, although the land so occupied and claimed by Darra was included in and covered by complainant's deed from Elizabeth Pitts, and is a part of the Ava Barbara Croma land. It was sold by the Lion Brewing Company, and described in their deed by reference to the plat made by Von Derheide as lot No. 28 of out-lot No. 4 of the Dequindre farm. The cottages erected by Siegle were removed by him in 1874, and the fence had been torn down and destroyed. There were sidewalks built and existing alongside of the premises to more or less extent. These sidewalks were built by Stroh or the Lion Brewing Company.

The complainant, soon after his purchase, caused a small shanty to be constructed on the corner of Adams avenue and John R. street, about a mile from the premises. The shanty was about 10 or 12 feet by 14 feet, and was placed upon skids or runners as a foundation. It had a floor, but no posts at the corners or anywhere else. The boards composing the building were supported by nailing them together at each corner. The boards were nailed up and down, there being a frame-work of scantling at the top. This shanty was moved upon the premises upon the skids, and left standing thereon, the skids not being removed. A fence of barbed wire inclosing the premises was also hastily constructed, with posts only at the corners. Then the bill was filed, of date March 12, 1885.

The object of building and moving this shanty upon the premises, and the inclosing of the same, was, manifestly, to gain sufficient possession to file and maintain the bill, and parties were hired by complainant to hold possession. After the commencement of suit Stroh entered and took possession and removed the fence.

From the time of the deed to Siegle, he and his grantees have paid the taxes upon the premises. At the time Watson

purchased, the Lion Brewing Company had signs posted upon the lots, advertising them for sale.

There is no claim that any of the Schmidtgall children are dead, and, from the record, it is to be presumed that they are all living, although their exact whereabouts does not appear. Not being made parties, and no one appearing for them, no great pains seems to have been taken to ascertain their present residence.

It is very evident, at first blush, that the decree of the court below cannot stand as it is.

If Elizabeth Pitts, at the time of the purchase by complainant, had any rights in these premises, then these other children had the same, or nearly the same, interest therein that she had. If legitimate, the Schmidtgall children, if the title gained under the probate proceedings was void, were entitled, at Samuel Croma's death, each to an undivided fifth of the premises inherited from their mother, and an undivided one-fourth of the one-fifth part which belonged to Samuel, making five-twentieths of the whole estate. If illegitimate, they were still entitled, under our statute of descent, each to an undivided one-fifth, as heirs at law of their mother.

" Every illegitimate child shall be considered as an heir of his mother, and shall inherit her estate in like manner as if born in lawful wedlock; but shall not be allowed to claim, as representing his mother, any part of the estate of any of her kindred, either lineal or collateral." How. Stat. § 5773a.

Nor could the legitimacy of these children, in a suit where their interests in property were to be determined and adjudicated upon the fact of their being born in or out of lawful wedlock, be litigated, without their being made parties to the controversy. The evidence in the record before us, where the complainant was doing his best to establish their bastardy, and the defendants did not seem much interested in disputing their illegitimacy, falls far short of confirming the claim that they are not of lawful birth. Indeed, there is enough to raise a fair presumption of their legitimacy, without anything of a positive nature to rebut it. The proof of their

illegitimacy is made of hearsay evidence and the gossip of old women.

These Schmidtgall children were necessary parties to this suit. The complainant had no right to proceed without making them parties. When it was developed, upon the taking of proofs, that these children existed, the complainant's bill should have been dismissed, unless amended so as to make them proper parties. And such an amendment could not cure the defect in the bill, under complainant's theory, unless they were made parties defendant, which was not done in this proceeding.

It is contended by the counsel for complainant that if these children are heirs of their mother, and therefore entitled to a share of these premises, and the defendants have no rights in these premises, it is none of their concern whether these heirs are made parties or not. But the right to proceed here does not depend upon the interest of the parties who have been made defendants. Under the complainant's theory, his claim to the larger proportion of this land depends upon the illegitimacy of these children, and he is asserting and striving to prove their bastardy all through the case.

Here, then, we have a case proceeding in equity, to determine the interests of these children in lands, in which premises the proofs show they are legally and equitably entitled to a greater or less share, depending in amount upon the lawfulness of their birth, if the complainant has any interest in the same.

And in the suit both parties, as joined in issue,—complainant and defendants,—are laboring, under different theories, to establish the fact that these children have absolutely no interest. By no theory of an equitable nature can such a course of procedure be justified without the opportunity being afforded these children to appear in court and defend their rights. It is not even shown that they are aware of this controversy, which is not only settling their property rights, but adjudicating upon the honor of their mother, and the purity and lawfulness of their entry into life.

If the complainant or defendants, or both together, wish

to proceed and litigate their respective claims to these premises, they must so shape their issues as not to involve the rights of property or name belonging to these Schmidtgall children, or to adjudicate upon them; or else give them fair notice and opportunity to defend their interests. It follows, therefore, that the complainant's bill should have been dismissed for this cause alone.

Neither do I think, under the proofs in this case, that the complainant had such a possession at the time of the filing of his bill as entitled him to maintain this suit.

The possession in this case was, clearly, unfairly and surreptitiously gained for the express purpose of getting a point upon which to place a lever to move in this suit. The whole proceeding was a mere make-shift. The fence was built, such as it was, and the shanty, if such it can be called, was run upon the premises, when the snow was about two feet deep upon the ground. It was not a fit habitation for any one, and was not placed there for the purposes of a dwelling. It was not a *bona fide* taking possession of one's own premises. It was simply a proceeding to pave the way for the filing of this bill against those whom complainant knew were exercising acts of ownership over the premises.

The complainant testifies :

" *Q*. It was a part of your purpose, in taking possession, to be in possession, was it not, so you could file a bill, and say you were?

" *A*. Certainly. Yes, sir; and another part of the object was to be in possession of my property and take care of it."

There was nothing to prevent his bringing an action of ejectment for these premises, and we have heretofore held that the statute authorizing one in possession of lands to file a bill of this character was not intended to apply to cases where, by sharp practice, a person acquires possession for the express purpose of immediately commencing suit, where a remedy in ejectment was previously thereto open to him. *Stetson v. Cook*, 39 Mich. 755 ; How. Stat. § 6626.[1]

[1] See *Supervisors v. Grand Rapids*, 61 Mich. 173; and for amendment to statute, see Act 260, Laws of 1887, p. 337.

The suit cannot be maintained, and the bill should have been dismissed for this reason.

But, in our opinion, the complainant has no standing in court for another reason. He is precluded by the statute of limitations from bringing this action. He claims entirely through Elizabeth Pitts, for herself and as heir at law of her brother, Samuel. Elizabeth became of age in 1871, and Samuel would have been 21, had he lived, in 1873. The bar of the statute closed upon both of the claims of these heirs in 1878, some seven years before complainant acquired his title.

Siegle took possession and built cottages upon the land in 1867, and they were occupied up to 1874, and since that time there has been a sufficient possession of the land by his grantees to constitute an open, notorious, and adverse use of these premises. *Curtis v. Campbell*, 54 Mich. 340. The adverse possession commenced in 1867, and there was no right of action in Elizabeth Pitts or her grantees after 1878. It is therefore unnecessary to examine the validity of the probate proceedings : *Toll v. Wright*, 37 Mich. 93. The statutes limiting action in this class of cases will be found in How. Stat. §§ 6074, 6075, which are given below.[1]

The bill will therefore be dismissed, with costs of both courts.

The other Justices concurred.

---

[1] " Section 6074.—No action for the recovery of any estate sold by an executor or administrator under the provisions of this chapter, shall be maintained by any heir or other person claiming under the deceased testator or intestate, unless it be commenced within five years next after the sale; and no action for any estate sold in like manner by a guardian shall be maintained by the ward. or by any person claiming under him, unless it be commenced within five years next after the termination of the guardianship, except as hereinafter provided.

" Section 6075.—The preceding section shall not apply to persons out of the State, nor to minors, or others under any legal disability to sue, at the time when the right of action shall first accrue; but all such persons may commence such action at any time within five years after the removal of the disability, or their return to this State."