BADGER GOLD MIN. & MILL. CO. v. STOCKTON GOLD & COPPER MIN. CO.

(Circuit Court, D. Oregon. July 26, 1905.)

No. 2,846.

1. MINING CLAIMS—SUIT TO QUIET TITLE—POSSESSION TO SUSTAIN.

The surreptitious running of a drift from one mining claim underneath the surface of another adjoining does not constitute such possession of the latter as will sustain a suit in equity to quiet title against one who is in the open and adverse possession of the surface and of workings therefrom.

2. SAME—DISMISSAL OF BILL—EFFECT ON CROSS-BILL.

The dismissal of a bill to quiet title to a mining claim does not carry with it a cross-bill filed by defendant seeking to have the title to the same claim quieted in him and which alleges facts not alleged in the original bill; nor is it necessary to the retaining of the suit for trial on the cross-bill, where it is in a federal court, that the cross-bill should contain the jurisdictional allegations as to the citizenship of the parties, which was shown by the original bill.

3. SAME—EFFECT OF ABANDONMENT BY PART OWNER.

The abandonment of a mining claim, the legal title to which is in the United States, by a part owner, does not vest any right or title to his interest in his co-owner.

4. SAME—FORFEITURE OF INTEREST OF PART OWNER.

The fact that after the owners of a part interest in a mining claim had done the assessment work thereon for a particular year they conveyed the claim to a corporation, taking in payment substantially all of its capital stock, which they retained, did not preclude the forfeiture of the interest of their co-owner for failure to contribute to the work by a notice given in accordance with Rev. St. § 2324 [U. S. Comp. St. 1901, p. 1426], and signed both by them and by the corporation, and the vesting of such interest in the corporation by virtue of their deed, which purported to convey the entire claim.

5. EQUITY—PLEADING—CROSS-BILL.

Where a bill to quiet title to a part interest in a mining claim alleged that defendant claimed title to such interest by virtue of forfeiture proceedings under the statute against complainant's grantor, which were alleged to be void, and proofs were taken upon the issue so raised without objection, it is not essential to the granting of relief to the defendant prayed for by a cross-bill that such forfeiture proceedings should have been again pleaded in the cross-bill.

In Equity.

The Badger Gold Mining & Milling Company, a corporation of the state of California, brought its bill as complainant against the Stockton Gold & Copper Mining Company, a corporation of the state of Washington, as defendant, alleging, in substance, that the complainant is the owner in fee simple of an undivided one-half interest in and to a mining claim in the Elk mining district, Grant county, state of Oregon, known as the Stockton Lode or Mining Claim; that on and prior to January 1, 1894, the land included in said claim was a part of the vacant, unoccupied, public mineral land of the United States subject to location; that William Welsh duly located the same; that on February 3, 1894, he caused a certificate of his location to be duly recorded; that on February 23, 1895, he sold and conveyed an undivided one-half interest in said claim to William Moran; that said Welsh and said Moran continued to hold and work said claim, including the lawful assessment work thereon for each year until March 23, 1897, when Welsh conveyed his remaining interest to other persons; that Moran and the successors of Welsh continued to hold the claim and do the assessment work thereon until February 12, 1902, when Moran conveyed his interest to Wellington Gregg, Jr.; that on July 22, 1902,

Gregg conveyed his interest to the complainant; that the defendant bases its claim of ownership to the entire mining claim through a conveyance of an undivided one-half interest therein and certain pretended proceedings of forfeiture instituted against Wm. Moran by virtue of section 2324 of the Revised Statutes [U. S. Comp. St. 1901, p. 1426], which proceedings were null and void; that the complainant is the owner of an undivided one-half interest of said claim, and is in possession of said claim; that the defendant has wrongfully caused said claim to be surveyed for a United States patent, and has caused the register of the proper land office to give notice of said application; that the complainant has caused a protest and adverse claim to said application to be filed, and proceedings on said application are stayed to await the determination of a court of competent jurisdiction; and the complainant prayed that it be decreed to be the owner of an undivided one-half interest in the said claim. The answer of the defendant denied that the complainant was, or ever had been, in possession of said mining claim, or any portion thereof, or was the owner of any interest therein. It denied that said Moran ever held said mining claim or did any act whatever required by law to hold the same, or did any work or labor or made improvements thereon at any time. It denied that the said Gregg ever did any act or things required by law to entitle him to hold the claim, or that he was ever in possession thereof, or entitled to any part or interest therein. The answer alleged that from and after the execution of the conveyance to said Moran on February 23, 1895, the said Moran never was in possession of any part of said mining claim, never took possession of any part thereof, but, on the contrary, soon after said last-named date, and long prior to December 15, 1897, he wholly abandoned said mining claim, and every part thereof, and left said claim with the intention of abandoning it; that by reason of said abandonment all interest in said claim inured to said William Welsh, and said Welsh remained in the exclusive possession thereof until December 15, 1897, when he conveyed said claim to W. C. Gibbs, and said Gibbs went into the actual, exclusive, open, and notorious possession of the whole of said claim, and so remained until about December 21, 1897, when he conveyed the claim to H. H. Ames and I. J. Simmons, who, from the time of said conveyance were in the open, exclusive, and notorious possession of said claim until June 14, 1899, when they conveyed the same to the Stockton Mining Claim; that said mining company and its immediate grantors expended in labor and improvements on and in developing said mine $24,671.69. The defendant thereupon set up its cross-bill for affirmative relief, and therein alleged that since June 14, 1899, by virtue of the location alleged in the bill and mesne conveyances from said locator, the defendant has been and still is the exclusive owner as against all the world except the government of the United States, and has been and still is in the exclusive and sole possession of said mining claim; that prior to April 29, 1904, the defendant filed in the proper land office field notes and a diagram of the mineral survey of said claim, also an application for a United States patent, and caused the register of the land office to give notice of said application for patent according to law, but thereafter, and prior to 60 days from the first publication of said notice of application for patent, the complainant, the Badger Mining & Milling Company, filed in the office of said register its adverse claim and protest to said application for patent; that thereupon all proceedings upon said application were stayed to await the determination of a court of competent jurisdiction; that at all times since the location of said claim the said Welsh and the mesne grantors of the defendant and the defendant during the time that each of them have been in possession of said claim have in all respects done and performed all the acts and things required by the laws of the United States, etc., to entitle them to ownership and exclusive possession thereof. And the defendant in the cross-bill prayed that such adverse claim of the complainant be adjudicated and declared null and void, and that the title and ownership of the defendant be established and confirmed, and that all cloud thereon be forever removed. The complainant filed its replication to the bill and its answer to the cross-bill, and thereupon the testimony was taken before an examiner.

M. A. Folsom and R. A. Leiter, for plaintiff.
G. G. Ames and John M. Gearin, for defendant.

GILBERT, Circuit Judge (after stating the case as above). It is clear from the evidence that the complainant's bill must be dismissed. The bill contained the averment that the complainant was in possession of the disputed premises. This averment was denied by the answer. The proof relied upon by the complainant to sustain its allegation of possession was that it had sunk a drift on a vein apexing in an adjacent claim, had followed the same on its dip beneath the surface of the claim in controversy, and had made side drifts therefrom into the ground underneath the surface of the latter claim. It was admitted that this alleged possession was acquired without the knowledge or consent of the defendant, and at a time when the defendant was in the adverse and open possession of the surface. Such a possession is not sufficient to sustain a suit to quiet title, and this for two reasons: First. It was a possession acquired secretly by trespassing and by unfair means. Equity will not lend its aid to protect a possession thus obtained. Comstock v. Henneberry, 66 Ill. 212; Gould v. Sternburg, 105 Ill. 488; Stetson v. Cook, 39 Mich. 750; Watson v. Lion Brewing Co., 61 Mich. 595, 28 N. W. 726; Dyer v. Baumeister, 87 Mo. 134. Second. It was not a possession of the whole claim. Actual possession of a portion of the property to quiet the title of which a suit is brought may be sufficient to authorize the complainant to bring the suit if it be coupled with constructive possession of the remainder (Coleman v. S. R. R. Co., 49 Cal. 517, Roberts v. N. P. R. R. Co., 158 U. S. 1, 15 Sup. Ct. 756, 39 L. Ed. 873), but here there was no such constructive possession, for the surface of the claim and all the workings from the surface were in the adverse possession of the defendant.

But it does not follow that the dismissal of the bill shall carry with it the dismissal of the cross-bill. Where the cross-bill alleges facts not alleged in the original bill, but which are directly connected with the subject-matter of the original suit, and prays affirmative equitable relief directly connected with and arising out of the matters of the original suit, and germane to the same, the court will order the cause to be retained for final hearing, and decree upon the cross-bill. Chicago & A. R. R. v. Union Rolling Mill Co., 109 U. S. 702, 3 Sup. Ct. 594, 27 L. Ed. 1081; Heinze v. Butte & Boston Con. Gold Min. Co., 126 Fed. 1, 61 C. C. A. 63; Markell v. Kasson (C. C.) 31 Fed. 104; Jesup v. Illinois Central R. Co. (C. C.) 43 Fed. 495; Lowenstein v. Glidewell, 5 Dill. 325, Fed. Cas. No. 8,575; Small v. Peters (C. C.) 104 Fed. 401. Nor is it necessary that the cross-bill shall contain the jurisdictional averments as to the citizenship of the parties. The parties to the original bill, being already before the court as parties thereto, are subject to its jurisdiction. Jesup v. Illinois Central R. Co. (C. C.) 43 Fed. 481–496; Schenck and Bliss v. Peay, 1 Woolw. 175, Fed. Cas. No. 12,450.

The defendant claims to have acquired the interest formerly belonging to Moran both by virtue of Moran's abandonment thereof and by its notice and forfeiture under the provisions of section 2324 of the Revised Statutes [U. S. Comp. St. 1901, p. 1426]. While

the evidence sufficiently shows that Moran, in 1895, left the mine without the intention of returning, and gave up and abandoned his interest therein, it is not shown how such abandonment operated to transfer his interest to the other owners. By an abandonment an occupant leaves the claim free to the location of the next comer. His interest reverts to the United States, and the claim is open to relocation. His abandonment inures to the benefit of no one except a relocator, and there was no relocation in the present case. By his abandonment Moran lost all interest in the claim, and had nothing which he could convey to the complainant's grantor, so that the complainant may be said to have acquired nothing through the conveyance of Moran to Gregg. It is equally true that the defendant has acquired nothing by the abandonment, and, in order to show that it is entitled to a patent to the whole claim, it must show its title to the whole.

It is contended that the proceedings to declare a forfeiture of Moran's interest are void by reason of defects in the notice. Welsh, on December 15, 1897, quitclaimed the whole mining claim to Gibbs, and on December 21st of that year Gibbs conveyed it to Ames and Simmons. Ames and Simmons did the assessment work for the year ending December 31, 1898. On June 14, 1899, they conveyed the claim to the defendant in consideration of 999,993 shares of the 1,000,000 shares of stock of that corporation. The remaining shares were transferred to others for the purpose of organizing the company. The date of the notice was July 28, 1899. At that time Ames and Simmons still owned the shares of stock which they had received. The notice was signed by Ames and Simmons and the Stockton Gold & Copper Mining Company. It is said that the notice did not comply with the law for the reason that at the time when it was given Ames and Simmons had parted with their interest in the claim, and at the time when the assessment work was done the mining company was not an owner. Reference is made to Turner v. Sawyer, 150 U. S. 578, 14 Sup. Ct. 192, 37 L. Ed. 1189, in which the court said: "It will be observed that the right to give this notice on a claim for contribution is limited to a co-owner who has performed the labor." The facts in the case so cited were that Turner, who gave the notice, did the annual assessment work for the year 1884; but the court found that he did it at a time when he was not a co-owner, since he did not acquire his title until March 3, 1885. The court in its decision strictly construed the language of the statute, which provides that "the co-owners who have performed the labor or made the improvements may at the expiration of the year give such delinquent co-owner personal notice," etc., and held that the work was done by one who did not come within the description of those to whom the remedy was given. In the present case a different state of facts exists. Ames and Simmons were owners at the time and during all the time when the annual assessment work for the year 1898 was done. Undoubtedly they could, at the end of the year, have given the notice provided for by the statute. Has that right become entirely

lost by the fact that prior to giving the notice they transferred their interest to a corporation, taking back substantially all its stock in consideration therefor? I am unable to see upon what ground it can be so held. The right given by the statute is a substantial one. No reason is perceivable why it is not assignable. But if it was not assignable it would seem that Ames and Simmons, owning as they did the stock of the defendant corporation, still substantially retained, notwithstanding their deed, their interest as owners which they had at the time when the assessment work was done. No substantial right of the complainant or its grantors is impaired by so holding, and the terms of the statute are complied with and its purposes are met. If Ames and Simmons had parted with their interest at the time of giving the notice, it is a matter which concerned them and their grantee. It did not concern Moran. And even conceding that their right was not assignable, and that by their conveyance to the defendant they parted with all their interest in the claim, they were nevertheless the co-owners who had done the assessment work, and to whom were given the right to proceed to forfeit Moran's interest. They would be estopped from denying the title of the defendant to the interest thus acquired, both by their conveyance of the whole claim to the defendant and by their action in the present suit. In Elder v. Horseshoe Mining & Milling Company, 194 U. S. 248, 24 Sup. Ct. 643, 48 L. Ed. 960, the court said of the purposes and object of section 2324, that they were "to encourage the exploration and development of the mineral lands of the United States and the sale of the same, and that, all the provisions of the law having been framed with that object in view, if the required work is not performed after the expiration of the year, and notice of contribution properly served or sufficiently published, the rights of delinquents are absolutely cut off, though the failure to do the work may have been caused by the death of the locator or locators during the year. When a notice has been rightfully published under the statute, it becomes effective in cutting off the claims of all parties, and the title is thus kept clear and free from uncertainty and doubt." Notice was given in the present case in the manner thus suggested by the Supreme Court. It is unimportant to consider to which of the parties signing the notice the forfeited interest accrued. I hold that the notice was effective to cut off the claim of Moran, and that that interest is now vested in the defendant.

It is objected that the defense of forfeiture is an affirmative one, and must be pleaded where the opportunity to do so is afforded, and authorities are cited which so hold. But in the pleadings on which this case is determined, no such opportunity was afforded. It is true that in the original bill of the complainant it was alleged that the defendant therein claimed to have acquired Moran's interest by forfeiture proceedings, and the defects were set forth which were said to render the proceedings void. But the cross-bill alleged no more than title and possession in the complainant, the nature of the cloud upon its title, and the adverse claim which it

sought to remove. The complainant answered the cross-bill by denials of the matters so alleged. The complainant having in its original bill so alluded to the forfeiture, and having offered its proofs herein under the issues which it so raised, and having made no objection to the proofs offered by the defendant, is in no position now to say that it is prejudiced by the failure of the defendant to plead in its cross-bill the forfeiture of Moran's interest.

The bill will be dismissed at complainant's cost, and a decree will be entered for the defendant as prayed for in its cross-bill, and for its costs and disbursements.