## ELDER *v.* HORSESHOE MINING AND MILLING COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH DAKOTA.

No. 220.   Submitted April 18, 1904.—Decided May 2, 1904.

A notice to a coöwner, to contribute his share of development work on a mining claim, when rightfully published under § 2324 is effective in cutting off the claims of all parties and the title is thus kept clear and free from uncertainty and doubt. Claims for more than one year may be grouped in one notice.

It is not necessary for the notice to delinquent coöwners required by § 2324, Rev. Stat., to specifically name the heirs of a deceased coöwner, but is sufficient if addressed to such coöwner, "his heirs, administrators and to whom it may concern," even though an administrator had not been appointed at the time.

A notice published every day except Sundays, commencing Monday, January 7, and ending Monday, April 1, held to have been published once a week for ninety days and to be sufficient under § 2324, Rev. Stat.

THE plaintiffs in error, being the administrator, together with the heirs at law of Rufus Wilsey, deceased, commenced this suit in the state court of South Dakota against the defendants, and upon the trial the complaint was dismissed upon the merits; that judgment was affirmed by the Supreme Court of the State, and the plaintiffs have brought the case here. The action was commenced to obtain a decree that defendants held in trust for the plaintiffs in error an undivided one-half interest in and to the land embraced in what is called in the complaint the Golden Sand lode mining claim, the plaintiffs asked for a decree that the defendants should convey to the plaintiff in

error, Elder, administrator, an undivided one-half interest therein, and for such other and further relief as might be just and equitable.

The answer contained a denial of the various allegations of the complaint and set up a defence of laches on the part of the plaintiffs in error in asserting their claim. The case went to trial before the court, and the following facts were found:

In January, 1878, Rufus Wilsey and Charles H. Havens located a mining claim near Bald Mountain, in the Whitewood mining district, Lawrence County, South Dakota, by discovering mineral-bearing rock in place, sinking a shaft, posting discovery notices and planting boundary stakes; and on May 13 of the same year they filed for record their location certificate, which was then recorded. On June 12, 1878, Wilsey died, and soon thereafter the plaintiffs, his heirs at law, were informed of his death. They knew that he had left property, and from a time shortly after his death corresponded with different attorneys and others residing in the Black Hills, trying to get something out of the estate, but, until the arrangement was made with the attorneys under which this action is brought, made no progress toward a settlement. From the time of the death of Wilsey, in 1878, up to December, 1893, the heirs of Wilsey did nothing toward contributing or offering to contribute toward paying for the annual labor made necessary by the Federal statute, Rev. Stat. sec. 2324; 2 Comp. Stat. p. 1426, in order to keep possession of the mine. On June 19, 1878, one Evans was appointed special administrator of the estate of Wilsey, and his letters were subsequently revoked, and one Stevens was appointed and filed his bond as administrator on August 13, 1881. Subsequently, on an allegation of the death of Stevens, some time in 1888, the present administrator was appointed on the twelfth of August, 1893.

In 1889, or soon thereafter, processes for the successful treatment of all mining ores, including such ore as was found in the ground in controversy, were introduced in Lawrence County, and as a consequence the value of the mining property

therein was materially enhanced, and this property became of much greater value in August, 1892, and December, 1893, than at any time since its location.

On December 5, 1893, the plaintiffs in error by their attorneys served on the defendant company an offer in writing to pay $700 for annual development and assessment work, and if that was not the correct amount of the expense for protecting their half interest in the Golden Sand lode, then they offered to pay the full amount due for the protection of the half interest of the plaintiffs in error, and they asked for a receipt, and demanded a deed for such half interest. The offer and the request were refused, and this action was begun on December 6, 1893.

From the time of the location of the mine up to 1888, inclusive, Havens, the coöwner with Wilsey, did at least one hundred dollars' worth of labor each year in order to hold the claim, and filed on January 2, 1889, an affidavit to that effect, including the time from 1880 to and including the year 1887, and another affidavit to the same effect for the year 1888. Under the statute he published a notice directed to "Rufus Wilsey, his heirs, administrators, and to all whom it may concern," informing them that he had expended $800 in labor upon the mine for the years ending December 31, 1880, 1881, 1882, 1883, 1884, 1885, 1886 and 1887, and stating that if within ninety days after this notice by publication they failed to contribute their proportion, $400, being $50 for each of said years, their interest in said claim would become the property of the subscriber under section 2324 of the Revised Statutes of the United States. Havens also published for the year 1888 a notice similar to the one already given in regard to the work done prior to that year. The two notices were published in the proper newspaper and were set out in full and published in each daily issue of the paper, (every day in the week except Sunday,) beginning Monday, January 7, 1889, and concluding Tuesday, April 2, 1889, and no more. Havens also continued during the years 1889, 1890, 1891, and 1892, to do at least $100 worth of work in the mine for the purpose of holding the same. On

August 10, 1892, Havens made a deed of the whole lode and mining claim to one Thomas H. White, and on August 25, 1892, White caused to be filed for record an affidavit of Havens, which recited that he was one of the locators of the Golden Sand lode and that Wilsey, his coöwner, and whom he advertised out for not contributing his proportion of labor, had not paid his proportion nor any of the expenditures for holding the claim.

Questions were made as to the sufficiency of the notices and as to the regularity of the publication of the same under the above statute of the United States. The case was tried once before and resulted in a judgment for plaintiffs, which was reversed by the Supreme Court of the State, 9 S. Dak. 636, and upon the new trial the judgment was for the defendants. 15 S. Dak. 124.

*Mr. Eben W. Martin* and *Mr. Norman T. Mason* for plaintiffs in error:

The notice of forfeiture was not sufficiently addressed. If there is any doubt as to the interpretation of the forfeiture provision of § 2324, the statute should be construed strictly as against defendants because it is a statute of forfeiture. On this point see, *Hammer* v. *Garfield M. & M. Co.*, 130 U. S. 291; *Johnson* v. *Young*, 24 Pac. Rep. 173 (Col.); *Quigley* v. *Gillette*, 35 Pac. Rep. 1040 (Cal.); *Early* v. *Doe*, 16 How. 615, 618; *Ronkendorff's Case*, 4 Pet. 349; 16 Am. & Eng. Ency. Law, 817; *Farmers Bank* v. *Dearing*, 91 U. S. 35; *Marshall* v. *Vicksburg*, 15 Wall. 146; *Turner* v. *Sawyer*, 150 U. S. 578; *Brundy* v. *Mayfield*, 38 Pac. Rep. 1067 (Mont.).

The title having vested in the heirs, it could not be disturbed by a notice given to a dead man. *Billings* v. *Aspen Co.*, 51 Fed. Rep. 338.

The heirs and administrator should have been mentioned by name. Many services have been held insufficient on account of inaccuracy in names of parties. *Detroit* v. *Railroad Co.*, 51 Fed. Rep. 9; *Cotton* v. *Ruppert*, 60 Michigan, 318; *S. C.*, 27

N. W. Rep. 520; *Entreken* v. *Chambers*, 11 Kansas, 368; *Thompson* v. *McCorkle*, 34 N. E. Rep. 813 (Ind.); *Chamberlain* v. *Blogett*, 10 S. W. Rep. 44 (Mo.); *New Orleans* v. *St. Romes*, 28 La. Ann. 17; *Bleidorn* v. *Pilot Mt. Co.*, 15 S. W. Rep. 737 (Tenn.); *Troyer* v. *Wood*, 10 S. W. Rep. 43 (Mo.).

As to effect of notice and whether subsequent action was necessary to forfeit the coöwner's title, see *Brundy* v. *Mayfield*, 38 Pac. Rep. (Mont.) 1069.

The publication was not sufficient as to time.  *Early* v. *Doe*, 16 How. 617; *Wilson* v. *Northwestern Mut. Ins. Co.*, 12 C. C. A. 505; *S. C.*, 65 Fed. Rep. 38; *Finlayson* v. *Peterson*, 67 N. W. Rep. 954 (N. Dak.); *Bacon* v. *Kennedy*, 56 Michigan, 329; 22 N. W. Rep. 824; *Pratt* v. *Tinkcom*, 21 Minnesota, 142, 146; *Boyd* v. *McFarlin*, 58 Georgia, 208; *Ogden* v. *Walker*, 59 Indiana, 460, 466; *Security Co.* v. *Arbuckle*, 24 N. E. Rep. 329 (Ind.); *Smith* v. *Rowles*, 85 Indiana, 265; *Market Nat. Bank* v. *Bank*, 89 N. Y. 398.

*Mr. Chambers Kellar* for defendants in error, cited as to sufficiency of notice, *Reilly* v. *Phillips*, 4 S. Dak. 604; *S. C.*, 57 N. W. Rep. 780, and distinguished cases on brief of plaintiffs in error; and cited as to sufficiency of publication: *Rokensdorff* v. *Taylor's Lessee*, 4 Pet. 349; *Nevada* v. *Yellow Jacket M. Co.*, 5 Nevada, 415; *Bachelor* v. *Bachelor*, 1 Massachusetts, 256; *Sheldon* v. *Wright*, 5 N. Y. 497; *Alcott* v. *Robinson*, 21 N. Y. 150; *De Peyster* v. *Michael*, 6 N. Y. 467; *Wood* v. *Moorehouse*, 45 N. Y. 368; *Chamberlain* v. *Dempsey*, 13 Abb. Pr. 421; *Steinze* v. *Bell*, 12 Abb. Pr. (N. S.) 171; *Wood* v. *Knapp*, 100 N. Y. 109; *Savings & Loan Society* v. *Thompson*, 32 California, 347; *Cox* v. *Lumber Co.*, 51 N. W. Rep. 1130; *Knowlton* v. *Knowlton*, 39 N. E. Rep. 595; *Madden* v. *Cooper*, 47 Illinois, 359; *Pierson* v. *Bradley*, 48 Illinois, 250; *Andrews* v. *People*, 84 Illinois, 28; *Garrett* v. *Mauss*, 20 Illinois, 549; *Raum* v. *Leech*, 54 N. W. Rep. 1058; *Johnson* v. *Hill*, 62 N. W. Rep. 930; *Wilson* v. *Scott*, 29 Ohio St. 636; *Martin* v. *Hawkins*, 35 S. W. Rep. 1104; *McDonald* v. *Cooper*, 32 Fed. Rep. 745.

MR. JUSTICE PECKHAM, after making the above statement of facts, delivered the opinion of the court.

The Federal questions which arise in this case are based upon the statute of the United States already referred to in the foregoing statement of facts, being section 2324 of the Revised Statutes, the material portion of which is set forth in the margin.[1]

The plaintiffs in error contend that the notices published by or in behalf of the defendants in error were not a compliance with the statute, because of the manner in which they were addressed. They also insist that, even assuming the sufficiency of the notices, they were not published in accordance with the

---

[1] Rev. Stat. sec. 2324; as amended 21 Stat. 61, c. 9, 2 Comp. Stat. p. 1426.

On each claim located after the tenth day of May, eighteen hundred and seventy-two, and until a patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year. On all claims located prior to the tenth day of May, eighteen hundred and seventy-two, ten dollars' worth of labor shall be performed or improvements made by the tenth day of June, eighteen hundred and seventy-four, and each year thereafter, for each one hundred feet in length along the vein until a patent has been issued therefor; but where such claims are held in common, such expenditure may be made upon any one claim; and upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns or legal representatives, have not resumed work upon the claim after failure and before such location. Upon the failure of any one of several co-owners to contribute his proportion of the expenditures required hereby, the co-owners who have performed the labor or made the improvements may, at the expiration of the year, give such delinquent co-owner personal notice in writing, or notice by publication in the newspaper published nearest the claim, for at least once a week for ninety days, and if at the expiration of ninety days after such notice in writing or by publication such delinquent should fail or refuse to contribute his proportion of the expenditure required by this section, his interest in the claim shall become the property of his co-owners who have made the required expenditures. Provided, That the period within which the work required to be done annually on all unpatented mineral claims shall commence on the first day of January succeeding the date of location of such claim, and this section shall apply to all claims located since the tenth day of May, Anno Domini eighteen hundred and seventy-two.

requirements of the statute for a sufficient length of time, and that, therefore, the title of. the plaintiffs in error was not divested. We are not impressed with the validity of either of the two objections.

As to the first. The notice was addressed as follows: "To Rufus Wilsey, his heirs, administrators, and to all whom it may concern." The objection made is that at the time when this notice was published, Rufus Wilsey was dead, and there was no administrator then existing and the names of the heirs were not given, and the notice, "to whom it may concern," was futile.

The statute, it will be observed, does not require that the published notice in regard to a deceased coöwner shall be directed to any one by name. Upon the failure of a coöwner to contribute his proportion of the expenditure required under the section, the coöwner who has performed the labor or made the improvements may, as provided for by the section, at the expiration of the year, give such delinquent coöwner personal notice in writing or notice by publication in the newspaper published nearest the claim, and if at the expiration of ninety days after such notice in writing, or by publication, the delinquent refuses to contribute his proportion or fails to do so, his interest in the claim thereby becomes the property of his coöwners who have made the required expenditures. We perceive no possible harm arising from the fact that the notice itself, containing all the facts necessary to be included therein, was addressed to "Rufus Wilsey, his heirs, administrators and to whom it may concern." The fact that Rufus Wilsey was dead was not material so far as to thereby render the notice to his heirs illegal or insufficient. It certainly did them no harm to include the name of Rufus Wilsey, and the notice was quite as likely to become known to them as if it had been addressed "to the heirs of Rufus Wilsey, deceased, his administrators, and to all whom it may concern." It is entirely unlike the publication of a summons for the purpose of commencing an action against a particular individual or individuals. There the identification must be complete and the person particularly de-

scribed and named, so that when the publication has been finished it can be known that the particular individual has been served with process by publication with the same effect as if it had been personally served on the same individual without publication. This statute provides a summary method for the purpose of insuring the proper contribution of coöwners among themselves in the working of the mine, and it provides a means by which a delinquent coöwner may be compelled to contribute his share under the penalty of losing his right and title in the property because of such failure. It was not necessary, in our judgment, that the notice should specifically name the heirs of the deceased owner. The act does not require it. If the notice be such that the former owner is particularly named and identified thereby, and his heirs are notified by the publication, it is a sufficient notice to them for the purpose of making it necessary for them to comply with the terms of the statute within the time designated therein by the payment of their share of the expenses of working the mine, or else to lose their right, title and interest therein. The coöwner who did the work might not know who the heirs were, and it might be impossible for him to learn their names or whereabouts, and the statute never contemplated that the man who did the work should be prevented from obtaining the benefit of the statute by his inability to learn who the heirs were and where they lived. A general address to the heirs of the person named and the proper publication of the notice, is sufficient. It did not become insufficient because in addition to being addressed to them it was also addressed to their intestate by name. An address to a deceased person did them no harm, so long as it was also addressed to them.

The Supreme Court of South Dakota has held in this case that at the time this notice was published the title to a one-half interest in this claim was in the heirs, subject to a possible lien of the administrator for administration purposes, and had been since the death of Wilsey. 9 S. Dak. 636, 642. The same court has held that an administrator has but a lien on real

estate for administrative purposes, and that the title vests in the heirs. (Cases cited in opinion of the state court.) The only debt, so far as the record shows, existing against the estate of Wilsey was one for $50, in favor of Stevens, who was appointed administrator in 1881, and died in 1888, and from then until 1893 there was no administrator, the present one being appointed evidently for the purpose of this suit. The actual title to the fee is in the government, but the interest of the miner may be conveyed and inherited. *Black* v. *Elkhorn Mining Company*, 163 U. S. 445, 449. We are of opinion that the publication of the notice was sufficient, although there was no administrator at the time of publication. It is unnecessary under this statute to publish a notice to lienors. We agree with the Supreme Court of the State that the evident purpose and object of the law of 1872 (section 2324) were to encourage the exploration and development of the mineral lands of the United States and the sale of the same, and that all the provisions of the law having been framed with that object in view, if the required work is not performed, after the expiration of the year, and notice of contribution properly served or sufficiently published, the rights of delinquents are absolutely cut off, though the failure to do the work may have been caused by the death of the locator or locators during the year. When a notice has been rightfully published under the statute it becomes effective in cutting off the claims of all parties, and the title is thus kept clear and free from uncertainty and doubt.

There was no irregularity in grouping in one notice claims for more than one year's expenditures. We can perceive no reason why a consolidation of the claims of several years should not be made and included in one and the same notice.

(2.) The objection to the sufficiency of the publication of the notice we regard as equally unfounded. The statute provides for a publication "for at least once a week for ninety days." The publication was in fact made every day, except Sunday, in the proper newspaper, beginning Monday, January 7, 1889,

and concluding Tuesday, April 2, 1889. And the statute provides that if, after the expiration of ninety days after such notice in writing or publication, such delinquent should fail or refuse to contribute his proportion of the expenditure required by this section, his interest in the claim shall become the property of his coöwners who have made the required expenditures. The publication, we think, was sufficient. The ninety day period begins with the first publication; in this case, Monday, January 7. The publication on that day was sufficient for the week then beginning. The publication on January 15 was sufficient for that week, and, as stated by the Supreme Court of South Dakota: "Each succeeding Monday would certainly constitute at least one publication each week while so continued. There was a publication on each Monday from January 7 to April 1, both inclusive. If no publication was required after the first until the following Monday, none was required after April 1 until the following Monday, April 8, and on that day the period of ninety days had been completed. Including the first day of publication, ninety days ended on Saturday, April 6. Excluding the first day, ninety days ended on Sunday, April 7. On that day the required notice had continued during ninety days, and another publication on Monday, April 8, was wholly unnecessary."

We are satisfied that this construction is the correct one, and the publication was, therefore, made for a sufficient length of time to comply with the statute.

The judgment of the Supreme Court of South Dakota is

*Affirmed.*