[Civil No. 2923.   Filed February 18, 1931.]

[296 Pac. 255.]

KIMBALL POMEROY, Appellant, v. SAM THORPE MINING COMPANY, a Corporation, Appellee.

Mr. J. E. Morrison and Mr. Luther P. Spalding, for Appellant.

Messrs. Cox, Moore & Janson, Mr. George P. Stovall, and Mr. O. B. De Camp, for Appellee.

ROSS, J.—On January 5, 1905, Sam Thorpe and J. T. Arrowsmith duly located two mining claims, under the names "Dixie King" and "Superior King," situated in the Pioneer mining district, Pinal county. Together they performed the annual representation work on the claims until in 1908, when Arrowsmith died, leaving surviving him his wife, Henrietta, and a minor child named Lee. Thereafter, during the years 1911, 1912, 1913, 1914 and 1915, Thorpe performed labor and improvements upon each of said mining claims of the value of $100 for each year.

December 9, 1916, Thorpe conveyed by deed all his right, title and interest in and to said mining claims to the Sam Thorpe Mining Company, a corporation. This company for the year 1916 did the annual assessment work and for the years 1917, 1918 and 1919, in lieu of doing the annual work, filed with the county recorder of Pinal county, under acts of Congress providing for such procedure, its notice of desire to hold the claims. The Sam Thorpe Mining Company did the annual work of $100 on each claim for the years 1920 and 1921. On March 7, 1922, the Sam Thorpe Mining Company made out a notice of forfeiture, directed "To J. T. Arrowsmith, his heirs, personal representatives, executors, administrators and assigns, and to whom it may concern," reciting in detail therein that it and its predecessor in interest had done and performed the annual assessment work on said mining claims as required by section 2324 of the Revised Statutes of the United States (30 U. S. C. A., § 28), relating to the performance of annual labor upon unpatented mining claims, and demanded therein that it be reimbursed one-half of said

expenditures, or the sum of $50 per claim for each annual period. This notice was personally served on the widow, Henrietta, on the said seventh day of March by handing her a copy thereof. On the same day she took such notice to her home and there handed it to the minor, Lee, who was then about eighteen years old.

Neither the surviving wife nor the son paid, or offered to pay, to the Sam Thorpe Mining Company any part of the assessment work after the expiration of the ninety days from the service of notice of forfeiture, or at all.

The notice of forfeiture and affidavit were not placed of record as required by paragraph 4042 of the Revised Statutes of Arizona, Civil Code of 1913.

On February 11, 1927, the widow and the son, Lee, who had arrived at his majority, conveyed to Kimball Pomeroy, the plaintiff, by a quitclaim deed, an undivided one-half interest in said mining claims; and thereafter, on November 5, 1927, Pomeroy brought this action against the Sam Thorpe Mining Company and several other defendants to quiet his title to such interest. The other defendants were dismissed from the case.

The facts as we have stated them were either admitted in the pleadings or conclusively established by the evidence.

The defendant interposed several defenses, briefly stated as follows: (1) Forfeiture for the failure on the part of the Arrowsmith heirs to do their share of the annual assessment work, or to reimburse the defendant or its predecessor in interest at the expiration of ninety days after notice and demand; (2) the three-year statute of limitation; (3) abandonment; and (4) laches.

Plaintiff demurred to all these defenses, and, the demurrers being overruled, the trial was had, re-

sulting in a judgment in favor of the defendant. Plaintiff has appealed, assigning as errors the overruling of demurrers and the findings of fact and conclusions of law. It will be necessary only to determine if any one of the defenses was good. We have examined the findings of fact, and are satisfied that they are supported by the evidence. If none of the defenses was good, then the demurrers should have been sustained.

From the statement of the case, it is seen that Sam Thorpe and J. T. Arrowsmith were colocators and co-owners of the two mining claims. They continued as such until in 1908, when Arrowsmith died. When he died, his half interest, the same being community property, passed under the law (paragraph 1100, Rev. Stats. Ariz. 1913 [Civ. Code], as amended by chapter 7, Laws 1921) to his wife and child in equal proportions, who thereupon became co-owners with Thorpe, and, after Thorpe conveyed, co-owners with the Sam Thorpe Mining Company, and were such on February 11, 1927, when they conveyed to Pomeroy, unless they had lost their interest through their failure to take necessary steps to protect it.

The Sam Thorpe Mining Company and its grantor, under the undisputed evidence, did the annual representation work on the two mining claims (or filed a claim of exemption therefrom during the years 1917, 1918 and 1919), amounting, according to the notice of forfeiture, to $2,000.

Where unpatented mining claims are owned in common, the law contemplates that each owner shall contribute his *pro rata* toward the annual assessment required by the federal laws. Under section 2324 of the Revised Statutes of the United States (30 U. S. C. A., § 28), it is provided:

"Upon the failure of any one of several coowners to contribute his proportion of the expenditures re-

quired hereby, the coowners who have performed the labor or made the improvements may, at the expiration of the year, give such delinquent coowner personal notice in writing or notice by publication in the newspaper published nearest the claim, for at least once a week for ninety days, and if at the expiration of ninety days after such notice in writing or by publication such delinquent should fail or refuse to contribute his proportion of the expenditure required by this section, his interest in the claim shall become the property of his coowners who have made the required expenditures.''

It was in pursuance of this provision of the law that the defendant Sam Thorpe Mining Company gave the notice of forfeiture to Arrowsmith's widow and son and demanded of them that they pay their proportionate share of the assessment work or forfeit their interest.

There is no question but that the notice to the widow and the service thereof were sufficient.

As to the minor child, there is a contention that the service of notice was not properly made upon him. The testimony of the widow and mother was that she gave the notice to her minor child, and that he said: '' 'The devil with the business, I will never get anything anyhow,' and threw it down.'' Thus it is seen that the minor actually received the notice and was given the opportunity to contribute his proportionate share of the assessment work for the many preceding years. In form and content the notice complied with the statute. It was properly addressed to the Arrowsmith heirs and legal representatives. *Elder* v. *Horseshoe Min. Co.*, 9 S. D. 636, 62 Am. St. Rep. 895, 70 N. W. 1060, 1061; *Elder* v. *Horseshoe Mining Co.*, 194 U. S. 248, 48° L. Ed. 960, 24 Sup. Ct. Rep. 643; *Evalina Gold Mining Co.* v. *Yosemite Gold Mining & Milling Co.*, 15 Cal. App. 714, 115 Pac. 946, 948. In the Elder case the service was by publication. It was

addressed "To Rufus Wiley, his heirs, administrators, and to all whom it may concern." This notice was held to be rightly addressed when the delinquent co-owner was an heir. The Evalina Gold Mining Company case involved the sufficiency of the service of notice, the facts being that the delinquents were given "personal notice in writing," but at the time they had parted with their interest to the Yosemite Gold Mining Company. They immediately passed the notice over to the Yosemite Gold Mining Company. The latter contended the notice was not sufficient. The court said:

" . . . The co-owner did, in fact, receive the notice by which every fact required by the statute to be given in the notice was made known to it. The Yosemite Gold Mining Company thus had the opportunity to protect itself from the forfeiture, and cannot now be heard to complain of consequences produced by its own neglect."

The "personal notice in writing" mentioned in the statute quite definitely implies that the delinquent must actually receive the notice. Casual information of the proceeding to divest him of his interest would not suffice. But where, as here, he actually is given the notice and reads it, or has an opportunity to read it, and admits receiving it even though it was not personally handed to him by the one demanding contribution, we think the spirit of the law is met or fulfilled. The purpose is that he should have an opportunity to protect his interests. Both the heirs, mother and child, knew from the notice handed to the former that their co-owner was demanding that they contribute to it their proportion of the annual representation work on these mining claims. We think the facts in this case bring it within the rule announced in the Evalina Gold Mining Company case, *supra*, and that the rule is a just and reasonable one under

the circumstances. When it is taken into consideration that the general disabilities of infancy do not relieve a minor from his obligation to do the assessment work on mining claims, or to contribute his proportionate share when the work is done by his co-owner, a demand upon him for such contribution, made through his natural guardian, would seem not only just but proper.

The remedy against a delinquent co-owner provided by section 2324 of the Revised Statutes of the United States is exclusive. The defaulting co-owner is not personally responsible for any part of the assessment work. *McDaniel* v. *Moore,* 19 Idaho 43, 112 Pac. 317. The contribution cannot be enforced by court proceedings, and, if it could, most or all of it would have been barred by limitation or defeatable by plea of infancy.

While forfeitures are not favorites of the law, it is said in *Van Sice* v. *Ibex Min. Co.,* 173 Fed. 895, 897, 97 C. C. A. 587:

"The rule is that a forfeiture will be enforced in a court of equity, when such relief accords more with the principles of right and justice than would the denial thereof. *Brewster* v. *Lanyon Zinc Company,* 140 Fed. 801, 72 C. C. A. 213; *Lindeke* v. *Associates Realty Co.,* 146 Fed. 630, 77 C. C. A. 56. There is the more reason for it in a case like the present, where the duty imposed by the statute upon a co-owner is not alone to his associates, but is also because of considerations of the common welfare. It is of public importance that the mineral resources of the country be explored and developed, and not left in indolent or indifferent hands. The policy exhibited in the statute would be ill subserved if, in the annual performance of labor and making of improvements, a co-owner of an unpatented claim might safely refuse or neglect to co-operate or contribute."

According to the record, Lee Arrowsmith on February 11, 1927, the date he executed a deed of

his interest in said mining claims to plaintiff, was about twenty-four years old. If he had anything to convey, it was not because of any diligence or manifestation of interest on his part. The property had been saved by his co-owners Sam Thorpe and Sam Thorpe Mining Company. Under such circumstances, there is no reason for applying a strict rule of construction to protect what he apparently had surrendered as of no value. On the contrary, all the equities are against his claim and that of his grantee, as we shall see later.

On October 5, 1917, the Congress passed a Joint Resolution (40 Stat. 343), as a war measure, suspending the requirement of one hundred dollars worth of annual representation work upon unpatented mining claims for the years 1917 and 1918, "Provided, That every claimant of any such mining claim in order to obtain the benefits of this resolution shall file or cause to be filed in the office where the location notice or certificate is recorded on or before December thirty-first, of each of the years nineteen hundred and seventeen and nineteen hundred and eighteen, a notice of his desire to hold said mining claim under this resolution. . . . '' Section 4620b, U. S. Comp. Stats. 1918.

Neither of these delinquents thought enough of his interest to file, or cause to be filed, "a notice of his desire to hold said mining claim (claims)." If there was a "desire," it was not manifested. Perhaps they did not file the notice because they conceived they had no mining claims "to hold."

Plaintiff's principal contention, however, is that the notice to the delinquent co-owners was not proved and filed as provided by paragraph 4042 of the Revised Statutes of Arizona, 1913, a step necessary to a divestiture of title. The material part of that section is as follows:

"Whenever a co-owner or co-owners shall give to a delinquent co-owner or co-owners the notice in writing or notice by publication provided for in section 2324 of the Revised Statutes of the United States, an affidavit of the person giving such notice, stating the time, place, manner of service, and by whom and upon whom such service was made, shall be attached to a true copy of such notice, and such notice and affidavit must be recorded in the office of the county recorder of the county in which the mining claim is situate after the expiration of ninety days after giving the notice. . . . "

But this paragraph must be taken and construed in connection with paragraph 4043, reading in part as follows:

"The original of such notice and affidavits, or the records thereof, shall be *prima facie* evidence that the delinquent mentioned in section 2324 has failed or refused to contribute his proportion of the expenditure required by that section, and of the service or publication of said notice. . . . "

All that these provisions pretend to do is to state a rule of evidence. If they are complied with, the co-owner who has done the assessment work is relieved of the burden of making proof *aliunde* that he has done the assessment work. The record of the notice and affidavits are *prima facie* evidence that the delinquent has failed or refused to contribute his portion of the expenditures necessary to keep the mining claim from becoming open to relocation. If a compliance with these provisions be construed as essential and indispensable to a forfeiture, they violate section 2324 of the Revised Statutes of the United States, *supra;* but, if construed as a rule of evidence in aid of the attempt to compel contribution from the delinquent, they are valid. It has been decided that, where a beneficial co-owner has given the notice as provided in section 2324, *supra,* and the delinquent

has failed or refused to contribute as therein required, he is absolutely cut off, though the failure to do the work may have been caused by his death. *Elder* v. *Horseshoe Mining & Milling Co.,* 194 U. S. 248, 48 L. Ed. 960, 24 Sup. Ct. Rep. 643; *Badger G. M. & M. Co.* v. *Stockton G. & C. Co.,* (C. C.) 139 Fed. 838.

Lindley in his work on Mines, third edition, volume 2, page 1628, section 646 says:

"As a rule the state laws provide for making a record of the various steps culminating in the forfeiture, making certain affidavits *prima facie* evidence of the facts and supplying something in the nature of a record chain of title. Such affidavits are required by departmental regulation in patent proceedings.

"The states of Arizona, California, Nevada, and Oregon have enacted laws supplementary to the federal statute, the provisions of which laws must also be complied with, as such laws are recognized to be within the power of the state. The fundamental requirements of the federal law must of course be observed, permissive local state legislation being limited to matters of detail."

In support of this statement he cites no case whatever. Defendant cites one case from California construing its statute, which is very similar to ours. *Robinson* v. *Briest,* 178 Cal. 237, 173 Pac. 88. That case holds that the notice must be filed for record within ninety days after service or it cannot be taken advantage of as *prima facie* evidence that the contribution to the assessment work has been refused. 40 C. J. 837, § 287. We think when a co-owner has done the representation work on an unpatented mining claim, as provided in section 2324, *supra,* and given notice in writing to his delinquent co-owner demanding that the latter contribute his proportionate share of such work, both under the statute and under the decisions he has done what was necessary to divest his

co-owner of his interest, unless the latter makes his contribution, and that the state legislature would have no power or right to impose upon him other duties or obligations in order to acquire the delinquent's interest.

While incidentally a compliance with the above provisions of the Arizona statutes may convey to a prospective buyer or encumbrancer of mining claims valuable information concerning the title thereto, the record of the notice and affidavits is not a muniment of title. It merely evidences a presumption that the delinquent has been cut off. This presumption may be overcome by showing that the annual work was not done, or, if done, that the claim of delinquency was unfounded. The record there provided for is not primarily to notify the world, or the co-owner who is being advertised out, of what is happening, as we said was the purpose of the notice provided for in section 2324, *supra,* in *Strode* v. *Wende,* 29 Ariz. 463, 242 Pac. 868, but is a record of what has happened. But, if it should be construed as a recording statute imparting notice to purchasers and encumbrancers of property, plaintiff is in no position to claim its benefits. He had actual notice from his grantors of the notice and demand for their share of the annual expenditures and of their failure to contribute before he purchased the one-half interest in the claims. He was also informed that his grantors had not done any of the assessment work for a number of years and had not contributed thereto. It is said in 23 R. C. L. 256, section 124:

" . . . It is an elementary rule in the construction of recording laws that notice of an unrecorded instrument is equivalent to the recording of it, with respect to the person having such notice."

Much might be said in favor of the other defenses, or some of them, barring plaintiff's right to recover

under the facts, but we find it unnecessary to consider them.

Believing that the judgment is in accordance with the law and that no error was committed, it is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.