[Civil No. 3721. Filed October 13, 1936.]

[61 Pac. (2d) 444.]

C. H. PALMER, Jr., Appellant, v. SUNNYSIDE GOLD AND DEVELOPMENT COMPANY, a Corporation, Appellee.

Mr. Louis L. Wallace and Mr. Carl D. Hammond, for Appellant.

Mr. E. Elmo Bollinger, for Appellee.

ROSS, J.—This suit was brought by the Sunnyside Gold and Development Company against the defendants, Sunnyside Consolidated Mines Company, C. H. Palmer, Jr., and Del Parsons, to quiet title to the

following group of mines, located in the San Francisco Mining District, Mohave County, Arizona:

"Sunnyside, Sunnyside Extention and Sunnyside Extension No. 1, lode mining claims, United States Patent being of record in Book 34 of Deeds at pages 185–188 inclusive.

"Also the Lodestone, Lodestone No. 1, Telluride No. 2, Telluride No. 3, Telluride No. 4, and Green Gold patented claims, and the Golden Queen unpatented claim, all of which are recorded in Book 34 of Deeds at pages 190–193 inclusive."

The complaint is in the usual form of actions to quiet title. It alleges ownership of mines; that defendants claim some right, title or interest in the mines adverse to the plaintiff; and asks that defendants be required to set out the nature of their claim and for judgment thereon.

The defendant mining company and Del Parsons made no appearance and judgment was taken against them by default.

Defendant Palmer filed motions to strike and to make the complaint more definite and certain, and demurrers both general and special. He answered that he claims the Golden Queen unpatented claim adversely to plaintiff; that he is the owner thereof under the name of the Sunset lode mining claim; that said Sunset was located upon open and unappropriated mineral land by J. D. Parsons (being the same as Del Parsons), on October 18, 1933, from whom he purchased it. Defendant sets out the same title and interest in a cross-complaint and asks that his title be quieted against the plaintiff.

The motions to strike and to make more definite and certain, as also the demurrers, were overruled. The case was tried to the court without a jury resulting in a judgment quieting plaintiff's title and denying any relief to defendant Palmer except a repay-

ment to him of an outlay of $50 which the court found he had paid to protect plaintiff's title.

The defendant has appealed and has assigned very many errors.

■ The ground of the demurrers was that the complaint failed to allege that the plaintiff was entitled to the possession of the mining claims. This was not necessary under our laws. The owner of realty may bring an action to quiet his title whether he is in or out of the possession. *Chuk* v. *Katich,* 27 Ariz. 182, 231 Pac. 923; *Floyd* v. *Hornbeck,* 39 Ariz. 178, 4 Pac. (2d) 908.

■ We will not set out all of the assignments and discuss them as to do so would unreasonably and unnecessarily extend the opinion. Suffice it to say the case was tried to the court, and even if there were errors in the admission of improper evidence, we will assume that only legal evidence was considered by the court. None of the assignments on the admission of evidence will be considered.

It is admitted, and the court so found, that the plaintiff was 'the owner of all of said mines, both patented and unpatented; that it failed to do the annual labor on the Golden Queen or to file any claim of exemption from performing such labor for the assessment year or period ending July 1, 1933. It is also admitted that the Golden Queen ground was subject to relocation and that on October 18, 1933, Parsons relocated it as the Sunset lode mining claim. The court found: That Del Parsons "hearing rumors that the Golden Queen claim was subject to forfeiture filed notice of location, which location notice included much of the patented ground to the adjoining Golden Queen claim. This relocation was made by the said Del Parsons for the express purpose of protecting the interests of the owner of the patented claims mentioned and described above, he, at the time,

believing that said property was owned by the Sunnyside Consolidated Mines Company.

"(That) after re-locating said property the said Del Parsons, communicated with said C. H. Palmer, Jr. and informed him that said Golden Queen claim had been re-located for the purpose of protecting the surrounding patented property and for the use and benefit of the owners of such patented property and upon the payment of Fifty ($50.00) Dollars by the said C. H. Palmer, Jr. to Del Parsons the said Del Parsons executed a deed conveying the said re-located claim to C. H. Palmer, Jr. . . . . ''

The court's conclusion of law was that whatever interest or title defendant Palmer acquired through Del Parsons was acquired and held in trust for plaintiff.

Defendant contends that the above findings of fact are not supported by the evidence but are against the evidence. If that be true, the court's findings should not be allowed to stand or be used as a basis for the court's legal conclusion. We have carefully examined the evidence and surrounding circumstances and are of the opinion that they do justify the findings of fact made by the court. The only witness who testified as to why Parsons re-located the Golden Queen as the Sunset was Parsons himself. Palmer did not testify. Parsons' testimony was to the effect that in 1927 and 1928 he had worked for the Sunnyside Consolidated Mines Company, predecessor in interest of the plaintiff; that at that time defendant Palmer was the president of the company. It was shown by other witnesses that Palmer had been president of the two corporations that had owned and operated the Sunnyside group of mines for twelve or fifteen years prior to 1931, when the plaintiff was organized and took over the properties, and that during his administration as president there had been

sunk on the Golden Queen a double-compartment shaft 554 feet deep, from which approximately 1,100 feet of lateral workings had been extended into the surrounding patented mines, at a cost of $56,000. Parsons said when he made the relocation he had heard the title was in a "jangle." His testimony is very short, and we let him speak for himself:

"Q. And when you located this ground that the shaft is on, Mr. Parsons, did anyone pay you for that location? A. Yes, *they* paid me for the work done. (Italics ours).

"Q. How much? A. Fifty dollars.

"Q. Who paid you? A. C. H. Palmer. I sold it to him for $50.00. He did not pay me for the work, I sold it to him.

"Q. Did you get a letter from Mr. Palmer prior to the time you located that claim? A. I did not. . . .

"Q. I believe the record shows that a few days after you located this, you gave Palmer a deed? A. I did.

"Q. And at the time you gave him a deed, he gave you fifty dollars? A. Yes.

"Q. Did you do anything? A. *I charged him fifty dollars for the work.* (Italics ours.)

"Q. Is that all you charged him for the work? A. Yes.

"Q. Did you write a letter to Mr. Palmer about locating the claim? A. I did after I located it. I was trying to get in touch with parties in charge of the Sunnyside at that time. It was in a jangle and no one knew who was the owner and I was doing it to save it for the Sunnyside or whoever was in charge of the Sunnyside.

"Q. At the time you located that and gave Palmer a deed, you knew he bought the property at sheriff's sale? A. Yes, I had heard of that. I just came back into Arizona and he was the only one I knew of in possession of the property; that was why I tried to get in touch with him.

"Q. You knew that if Mr. Palmer operated the Sunnyside, it was necessary for him to have that

shaft? A. Well, the property was in danger at the time I located that and I did it for the purpose of saving it for the Sunnyside or those interested. A disinterested party was about to take the matter up. They came to me for information in regard to this unpatented claim.

"Q. Your action, then, was for the purpose of protecting the Sunnyside property? A. Yes, I was trying to protect the party I thought owned the rest of the property."

Anyone reading this testimony will irresistibly be brought to the conclusion that Parsons did not locate the Sunset for himself but for the owner of the Golden Queen and the patented claims; that he did not sell the claim, as he states, to Palmer for $50; but that he deeded it to him for his work in monumenting and doing location work and as the possible owner or representative of the owner of the patented claim. He says: "I was doing it to save it for the Sunnyside or whoever was in charge of the Sunnyside." It is quite clear, therefore, that Parsons was acting as a trustee of the Sunnyside Gold and Development Company in making the location and that he conveyed the title to Palmer with the understanding or belief that the latter would hold the title in trust for the plaintiff.

There are reasons independent of those stated by Parsons that impel us to believe that he located the Sunset claim for the plaintiff and that he thereafter conveyed the title to Palmer in trust for plaintiff. These reasons are: (1) That Palmer had sued the plaintiff's predecessor in interest, the Sunnyside Consolidated Mines Company, and had obtained judgment against said company; had caused the Sunnyside group of mines to be sold under execution, and had, on August 28, 1933, bought the property in and received a sheriff's certificate of sale, which he held on October 18, 1933, when the Sunset location was made. That is

why Parsons testified " . . . no one knew who was the owner and I was doing it to save it for the Sunnyside or whoever was in charge of the Sunnyside. . . . He (Palmer) was the only one I knew of in possession of the property." (2) That the Golden Queen ground consists of two or three acres and is entirely surrounded by the patented mines of plaintiff, and is principally, if not wholly, valuable for the purpose of ingress and egress through the shaft plaintiff had sunk on it to explore the patented mines. Parsons knew this and wanted, as he says, to save it for the Sunnyside. Palmer, better than anyone else perhaps, knew the Golden Queen, with its extensive shaft, was valueless to anyone except the owners of the surrounding patented mines, and joined Parsons in saving it for the owner of the patented mines; for himself, in case the mines were not redeemed from his sale and purchase and he obtained title; for the plaintiff, or its predecessor, in case the property was redeemed from such sale. The plaintiff redeemed from the sheriff's sale and removed that cloud from its title.

■ We think the evidence shows Parsons conveyed the legal title to Palmer under an express understanding that he would hold such title for the Sunnyside Company, if it redeemed from the sheriff's sale, and for himself if there was no redemption and he became the owner of the group of mines.

But if it be contended that the language of Parsons, describing his purpose in locating the Sunset and conveying the title to Palmer, does not evidence an express trust, we have no doubt it imposed upon Palmer an implied trust to hold the title for the Sunnyside Company.

"Implied trusts are more frequently defined as those which, without being expressed, are deducible from the nature of the transaction as matters of intent, or which are superinduced upon the transaction

by operation of law as matters of equity, independently of the particular intention of the parties." 65 C. J. 221, § 12.

Every equity is with the plaintiff, not one with defendant. If the law and facts impelled us to decide the defendant Palmer is the owner of the Golden Queen ground by virtue of the Sunset location, it would be of no benefit to him except to prevent the Sunnyside Company, the owner of the surrounding patented claims, from using the shaft on it in working and developing the adjoining mines. He could not use the shaft, as it seems to be conceded that no mineral of value exists or has been found in the Golden Queen ground.

■ It might be contended that, because of the statute of frauds (section 947, Rev. Code 1928), a trust in the Sunset mining claim in favor of the plaintiff cannot be established by proof of an oral agreement or arrangement such as the evidence discloses. That is not the rule where a party locates a mining claim in his name for the use and benefit of another. In such case he, or his grantee with knowledge of the facts, may be compelled to convey the title to the beneficiary. In *Book* v. *Justice Min. Co.*, (C. C.) 58 Fed. 106, 119, the court said:

"The statute of frauds (Gen. St. Nev. § 2624), relied upon by complainants, has no application whatever to the facts of this case. An oral agreement to locate a mining claim for the benefit of another need not be in writing. If a party, in pursuance of such an understanding at the expense of another, locates the claim in his own name, he holds the legal title to the ground in trust for the benefit of the party for whom the location was made; and such party could, upon making the necessary proofs, compel the locator of the mining claim to convey the title thereof to him, although the agreement so to do was not in writing. This familiar principle has been

often applied in cases where a party has entered into an oral agreement to locate mining ground for the joint benefit of himself and others, and makes a location in his own name. It has always been held that such oral agreements are not within the statute of frauds. *Gore* v. *McBrayer,* 18 Cal. 582; *Moritz* v. *Lavelle,* 77 Cal. 10, 18 Pac. 803 [11 Am. St. Rep. 229]; *Hirbour* v. *Reeding,* 3 Mont. 15; *Welland* v. *Huber,* 8 Nev. 203.''

The principle declared in the above case we think is applicable to the facts of this case. While the Parsons location was not made in pursuance of any agreement or for any consideration, Parsons' act inured to the benefit, as he intended, of the owner of the patented claims, of which group the Sunset was a part; and from his testimony it seems clear he conveyed the legal title to defendant Palmer in trust for the Sunnyside Company as the owner of said group of mines.

The court's decree quieting title in plaintiff was upon condition that plaintiff pay Palmer the $50 he expended in protecting the Golden Queen during the time he held the sheriff's certificate of sale of plaintiff's group of mines. Complaint is made that plaintiff did not offer, in its complaint or otherwise, to reimburse defendant his expenses, and, not having offered to do justice by tendering to defendant such expenses, it is insisted that plaintiff should be denied relief. If the plaintiff in an action to quiet title were required to anticipate defendant's defense and state it, it might be he should, where, as in this case, he claims defendant's title is held in trust for plaintiff, offer to reimburse defendant any expenses to which he was put in protecting the title. But under the law the plaintiff in such action is not required to do anything more than allege his ownership of the property and the adverse claim of defendant and then it is up to the defendant to set out his title. That was

done here and perhaps plaintiff should have, by reply or otherwise, offered to make defendant trustee whole, but no point was made of the omission until after the trial and the entry of judgment.

Since under the judgment plaintiff is required to reimburse defendant his expenses, the equitable rule invoked is not violated.

The judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.