**Anthony FARGO et al.,
Plaintiffs-Appellants,**

v.

**McALESTER FUEL COMPANY, a
corporation, Defendant-Appellee.**

**No. 74–2270.**

United States Court of Appeals,
Ninth Circuit.

March 19, 1976.

---

W. T. Elsing (argued), Phoenix, Ariz., for plaintiffs-appellants.

John M. Favour (argued), of Favour & Quail, Prescott, Ariz., for defendant-appellee.

OPINION

Before DUNIWAY and KENNEDY, Circuit Judges, and RENFREW,* District Judge.

* The Honorable Charles B. Renfrew, United States District Judge, Northern District of California, sitting by designation.

RENFREW, District Judge:

This is an appeal from the judgment of the District Court granting appellee's motion for summary judgment. The action below was in effect a suit to quiet title to two unpatented mining claims in which appellants claim an undivided one-fourth interest.[1] Appellee contends that appellants own no interest in the claims. This Court's jurisdiction is based on 28 U.S.C. § 1291.

The mining claims on which this litigation centers are known as Victor Copper and Victory Copper No. 1, which for convenience the parties have referred to as the Victorys.[2] The Victorys were located on January 16, 1945, by C. H. Barnes, George Fryer and Charles H. Brown. Each locator originally owned an undivided one-third interest in the claims; however, by a series of conveyances ending on August 28, 1952, Charles H. Brown acquired the interests of the other two locators. On April 4, 1966, Charles H. Brown and his wife, Julia E. Brown, contracted to sell their interest in the Victorys—stated in the contract of sale to be 65 per cent—and in ten other mining claims to appellee. They conveyed these interests to appellee on December 21, 1966.[3]

Appellants' adverse claim is based upon a duly recorded quit claim deed, dated June 10, 1964, from Charles J. Brown, son of Charles H. and Julia E. Brown, to appellants, which appellants contend conveyed to them a one-fourth interest in the Victorys. This quit claim deed concerned the Victorys as well as eleven other mining claims. Charles J. Brown had been an original locator of eight of those thirteen claims. However, he had not located any of the other five claims, of which the Victorys were two. Furthermore, the record discloses no recorded conveyance from Charles H. Brown to Charles J. Brown of an interest in the Victorys. Appellants argue, however, that Charles H. Brown had originally located the Victorys for his own benefit and for the benefit of his sons, Howard L. and Charles J., and had held his sons' interests in the claims in trust; therefore, appellants contend, Charles J. Brown acquired an equitable interest—consisting of an undivided one-fourth—in the Victorys which he had a

---

1. Technically, this action was brought pursuant to 30 U.S.C. § 30 following the filing by appellants of an adverse claim in response to appellee's application for a mineral patent. Section 29 of Title 30, United States Code, outlines the procedure for obtaining a patent for any land claimed and located for valuable mineral deposits. Section 30 of that title, concerning adverse claims, provides in pertinent part:

   "Where an adverse claim is filed during the period of publication, it shall be upon the oath of the person or persons making the same, and shall show the nature, boundaries, and extent of such adverse claim, and all proceedings, except the publication of notice and making and filing of the affidavit thereof, shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived. It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim."

2. The record reflects some terminological confusion concerning the first claim. Usually this claim was referred to as "Victor Copper"; however, in the Notice of Forfeiture published

pursuant to 30 U.S.C. § 28 and discussed *infra*, it was referred to as "Victory Copper". The Court had adopted the former nomenclature, which was used in the Notice of Mining Location filed on February 26, 1945, in the office of the County Recorder of Yavapai County, Arizona. Appellants originally sought to establish ownership of an undivided one-fourth interest in twelve unpatented lode mining claims situated in Walnut Grove Mining District, Yavapai County, Arizona, referred to as the "Victory Group." Administrative proceedings before the Department of the Interior resulted in seven of the twelve claims being declared null and void by the Department in a decision dated March 20, 1973. By stipulation the issues in dispute were further narrowed by the parties to the question of ownership of the Victorys, which is the question presently before the Court.

3. The contract of sale further stated that Howard L. Brown, son of Charles H. and Julia E. Brown, owned an undivided 25 per cent interest in the Victorys. This interest was conveyed to appellee on January 17, 1967.

   All of the conveyances referenced in the text were duly recorded in the office of the County Recorder of Yavapai County, Arizona.

right to convey, and did in fact convey by the June 10, 1964 quit claim deed, to appellants.

In response, appellee maintains, in essence, that as a bona fide purchaser for value of Charles H. Brown's legal interest in the Victorys without notice of either Charles J. Brown's purported equitable interest or of the conveyance from Charles J. Brown to appellants, its title to the claims is secure. Appellants counter this argument as follows. Even though the record before the Court contains no evidence directly indicating that Charles H. Brown had located the Victorys on behalf of his sons as well as on his own behalf, there are documents duly recorded in the County Recorder's office suggesting that Charles H., Julia E. and Howard L. Brown, and others, acknowledged in Charles J. Brown an interest in the Victorys.[4] Appellants argue further that these documents would have been discovered by anyone searching title to the Victorys, since all of them contain the name of Charles H. Brown who, as an original locator of the claims, was in the regular chain of recorded title; that appellee is thus charged with knowledge of their contents, specifically, that Charles J. Brown owned an interest in the Victorys; and that a diligent search of title by means of the grantor/grantee index in the County Recorder office under the name of Charles J. Brown would have disclosed the existence of the June 10, 1964 quit claim deed from Charles J. Brown to appellants.

Appellee takes issue with this argument on several grounds. First, appellee argues that the documents outlined in footnote 4 herein would not, as a matter of law, excite the interest of one searching title to the Victorys in the purported interest of Charles J. Brown in those claims; second, that even if appellee is charged with the knowledge of the June 10, 1964, quit claim deed from Charles J. Brown to appellants, it was entitled to give that conveyance no weight, since Charles J. Brown appears as a mere interloper in the chain of legal title to the Victorys, that is, there is no recorded conveyance from one of the original locators to Charles J. Brown; and third, that

4. Appellants rely upon the following documents:

(1) A memorandum of agreement dated February 18, 1956, executed by Charles H., Charles J. and Howard L. Brown, Bruce Rush, and their wives, as sellers, and one W. W. Simmons, as buyer, concerning the sale of twelve mining claims (the Victory Group), which included the Victorys;

(2) A mining agreement and contract of sale dated March 4, 1960, executed by Charles H., Charles J. and Howard L. Brown, and their wives, as lessors, and one Samuel E. Hughes, as lessee, concerning the lease of the Victory Group claims;

(3) A lease and option to purchase dated May 8, 1963, executed by those same parties as lessors, and one Harold Fenix, as lessee, concerning the same claims;

(4) An agreement dated September 25, 1963, between Charles H. Brown and Albert H. Mackenzie, which contains the following recital: "WHEREAS, Brown, with his two sons, Howard Brown and Charles J. Brown, are the owners of those certain unpatented mining claims known as: [here followed the names of the twelve claims in the Victory Group] * * *"; and

(5) Two Affidavits of Labor Performed and Improvements Made on the twelve claims in the Victory Group, dated September 5, 1962, and August 28, 1963, respectively, stating that Charles H., Charles J. and Howard L. Brown were the owners of those claims. (The affidavit dated August 28th lists their wives as well.)

All of these documents were duly recorded in the office of the County Recorder of Yavapai County, Arizona, with the exception of the March 4, 1960 contract of sale which, though duly notarized, was never recorded.

In addition, appellants point to certain letters exchanged by Charles H. and Charles J. Brown on the one hand, and appellant Anthony Fargo on the other. Several of these letters were apparently written to collect from Fargo one fourth of the annual assessment work that Charles H. Brown had performed on the Victory Group of claims; others were written to apprise Fargo of on-going negotiations concerning the sale or leasing of the claims. In one of Charles H. Brown's letters to Fargo, dated July 10, 1964, he explicitly referred to "the Victory Group of Claims that you purchased $\frac{1}{4}$ interest in from Jay Brown." On another occasion, Charles J. Brown wrote to Fargo that "I believe I can get Dad [and] Mothers [sic] interest for you for $6,000. In that case you would own approximately $\frac{3}{4}$ of the claim * * *." None of these letters was recorded in the office of the County Recorder of Yavapai County, Arizona.

even assuming the validity of that conveyance, appellants forfeited any interest they might have acquired in the Victorys as a result of the notice published by Charles H. Brown pursuant to 30 U.S.C. § 28.[5]

Appellants' final point is that no forfeiture occurred, since the published notice was technically deficient in several respects. Appellee disagrees.

The issues before this Court, then, are whether the District Court erred in finding that there existed no genuine issue of material fact as to (1) whether appellee was an innocent purchaser for value without notice of Charles J. Brown's purported equitable interest in the Victorys and his conveyance of any such interest to appellants; if not, (2) whether appellants acquired an interest in the claims which is valid against appellee, an owner in the recorded chain of title; and if so, (3) whether appellants' interest was forfeited by the notice published pursuant to 30 U.S.C. § 28.

■ With respect to the first issue, it is unclear under Arizona law whether appel-lee was a bona fide purchaser for value without notice. Under Arizona law

"a person who fails to exercise due diligence to avail himself of information which is within his reach is not a bona fide purchaser. [Citation] Thus a purchaser who has brought to his attention circumstances which should have put him on inquiry which if pursued with due diligence would have led to knowledge of an adverse interest in the property, is not a bona fide purchaser." *Davis v. Kleindienst,* 64 Ariz. 251, 169 P.2d 78, 83 (1946).

Applying this standard to the undisputed facts of record, we believe that the many references contained in the documents described in footnote 4 to Charles J. Brown as one of several owners of the Victory Group of claims would have put a reasonably prudent person on notice of Charles J. Brown's possible adverse claim in the Victorys. To be sure, those documents are ambiguous in that they do not indicate in which of the twelve Victory Group claims Charles J. Brown may have had an interest. However, one searching title to two of those

---

5. Section 28 of Title 30, United States Code, provides in pertinent part:

"On each claim located after the 10th day of May 1872, and until a patent has been issued therefor, not less than $100 worth of labor shall be performed or improvements made during each year. * * * Upon the failure of any one of several coowners to contribute his proportion of the expenditures required hereby, the coowners who have performed the labor or made the improvements may, at the expiration of the year, give such delinquent coowner personal notice in writing or notice by publication in the newspaper published nearest the claim, for at least once a week for ninety days, and if at the expiration of ninety days after such notice in writing or by publication such delinquent should fail or refuse to contribute his proportion of the expenditure required by this section, his interest in the claim shall become the property ·of his coowners who have made the required expenditures."

Pursuant to that statutory provision, Charles H. Brown caused the following notice to be published in the Yavapai County Messenger once a week during the period August 21, 1965 to November 13, 1965:

"TO: ANTHONY FARGO, JAMES DePILATO, JOHN ADDANTO and PATRICK FRAINCI

"You are hereby notified that I have expended $1,200.00 in labor and improvements on the Victory Copper, Victory Copper No. 1, Victory Copper No. 2, Copper Bar No. 1, Copper Bar No. 2, Red Cap, Lucky Big Horn, Copper King No. 1, Copper King No. 2, Copper King No. 3, Copper King No. 4, and Copper King No. 5, unpatented mining claims situate in the Walnut Grove Mining District in Yavapai, Arizona, as appears by Affidavit of Labor and improvements filed in the office of the County Recorder of Yavapai County, Arizona, for the assessment year 1963–1964, in order to hold said mining claims under the provisions of Section 2324 Revised Statutes of the United States. Said expenditure was required to hold said mining claims for the assessment year 1963–1964. If, within ninety (90) days after this notice and the publication thereof, you fail or refuse to contribute your proportion of such expenditure in the sum of $300.00 as co-owners, your interest in said mining claims will become the property of the undersigned under provisions of said Section 2324 Revised Statutes of the United States.

s Charles H. Brown
Charles H. Brown"

twelve mining claims cannot simply assume that Charles J. Brown did not claim an interest in those particular claims. A standard of due diligence would thus have required appellee to pursue the possibility that Charles J. Brown had an interest in the Victorys. If appellee had done so, it would have discovered—by means of the grantor/grantee index in the County Recorder's office—that Charles J. Brown was not in the chain of title from any of the original locators of the Victorys, but that he had conveyed to appellants by recorded quit claim deed his purported interest in the Victory Group of claims. Therefore, the Court charges appellee with notice of these facts.

Whether notice of an instrument of record not in the chain of title but which may evidence a title defect constitutes notice such as to deprive a purchaser of protection as a bona fide purchaser is a difficult question of law.[6] It is a question on which Arizona's courts have not spoken, and on which courts in other jurisdictions disagree.[7] Under these circumstances we do not feel competent to predict which position Arizona's Supreme Court would adopt when confronted with this question. Therefore, for the purposes of this decision we will assume, to appellants' benefit, that appellee, whom we have charged with notice of the June 10, 1964 quit claim deed, was not, and cannot claim protection as, a bona fide purchaser for value without notice.

■ Appellants, then, are entitled to go forward with proof of their adverse claim. There is some evidence in the record, summarized in footnote 4, suggesting that both Charles H. and Charles J. Brown acknowledged in appellant Fargo a one-fourth interest in the Victory Group claims. However, as appellee emphasizes, there is no written, acknowledged conveyance from Charles H. to Charles J. Brown of any interest in the Victorys, as would appear to be required by Arizona's statute of frauds.[8] Appellee contends that, unless that statute is not controlling, any purported conveyance from Charles H. to Charles J. Brown is invalid and, therefore, appellants' claim against an owner in the recorded chain of title must fail.

Appellants argue that Arizona law recognizes an exception to the requirements of the statute of frauds when a person locates a mining claim for the use and benefit of another. They rely upon *Costello v. Graham*, 9 Ariz. 257, 80 P. 336 (1905), and *Palmer v. Sunnyside Gold & Development Co.*, 48 Ariz. 327, 61 P.2d 444 (1936). Even if appellants' statement of Arizona law is correct, we do not believe that the record contains any evidence in support of their argument. When Charles H. Brown located the Victorys in 1945, he became the owner of an undivided one-third interest in those claims; one half of that interest was subsequently conveyed to one Phillips De Hesse by a duly recorded quit claim deed dated August 12, 1950. These facts are simply inconsistent with appellants' theory that from the moment Charles H. Brown located the Victorys, Charles J. and his brother Howard L. Brown each owned an undivided

**6.** "This class of cases very frequently presents questions of the greatest difficulty; and the language of Lord Chancellor Northington is generally applicable to any one of them: 'This is one of those cases which are always very honorably labored by the counsel at the bar, and determined with great anxiety by the court, as some of the parties must be shipwrecked in the event.'" 8 G. Thompson, *Real Property* § 4324, at 426 (1963), quoting from *Stanhope v. Verney*, 2 Eden 81.

**7.** *See* 8 Thompson, *Real Property* § 4324, *supra*, n. 6 at 425–428, and cases there cited.

**8.** That statute provides as follows:

"A. No estate of inheritance, freehold, or for a term of more than one year, in lands or tenements, shall be conveyed unless the conveyance is by an instrument in writing, subscribed and delivered by the party disposing of the estate, or by his agent thereunto authorized by writing.

"B. Every deed or conveyance of real property must be signed by the grantor and must be duly acknowledged before some officer authorized to take acknowledgements." 11 Ariz.Rev.St.Anno. § 33–401.

The parties agree that an unpatented mining claim is treated as real property under Arizona law. *Bagg v. New Jersey Loan Company*, 88 Ariz. 182, 354 P.2d 40 (1960).

25 per cent equitable interest in them. The only possible manner in which Charles H. Brown's sons could have obtained an interest in the Victorys is by conveyance subsequent to August 28, 1952, the date on which Charles H. Brown acquired a 100 per cent interest in the claims. If there were such conveyances, the record before the Court contains no written instrument attesting to them, nor a basis upon which to found an equitable exception to the Statute of Frauds excusing a writing.

Accordingly, we hold that appellants have failed to establish that their adverse claim to the Victorys is valid and, therefore, that the District Court did not err in granting summary judgment for appellee.

 Even if the Court is mistaken in its view of Arizona law, we believe that the notice published by Charles H. Brown in the Yavapai County Messenger, set forth in footnote 5, effectuated a valid forfeiture of appellants' claimed 25 per cent interest in the Victorys. We do not agree with appellants' contention that the notice of forfeiture was technically deficient.[9] The notice was not defective for failure to itemize the amount spent on each of the twelve claims, given that a total of $1,200 was spent and the statute clearly requires a minimum expenditure of $100 per claim. The obvious inference is that $100 was spent on each of the twelve claims. Nor is the notice defective for including work performed on the Lucky Big Horn and Copper King No. 5 claims. Although those claims were quit claimed by Charles H. Brown to one Robert Ford, the date of the conveyance was June 25, 1965. The published notice sought contribution from appellants for labor performed during the "assessment year 1963–1964". Finally, the Court finds that the published notice gave adequate notice to appellants of the precise claims which were sought to be forfeited. *See* 2 *American Law of Mining* § 8.13, at 215 (1975). The claims were listed by name and were de-

scribed as situated in the Walnut Grove Mining District in Yavapai County, Arizona; the notice also referred explicitly to the Affidavit of Labor and Improvements filed in the office of the County Recorder of Yavapai County, Arizona. That affidavit contains the official book and page numbers for each of the recorded location notices of the claims.

JUDGMENT AFFIRMED.

---

9. We note in passing that, even though a forfeiture statute such as 30 U.S.C. § 28 is to be strictly construed, on at least one occasion the Supreme Court has declined to find a notice published pursuant to that statutory provision insufficient because of alleged technical deficiencies in the form of notice. *See Elder v. Horseshoe Mining & Milling Co.*, 194 U.S. 248, 254–257, 24 S.Ct. 643, 645, 48 L.Ed. 960, 963 (1904).